UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.     CRIMINAL NO. 4:17-CR-45

RICHARD FLOYD TATUM JR.

### PLEA AGREEMENT

The United States of America, by and through Abe Martinez, Acting United States Attorney for the Southern District of Texas, and Grace E. Albinson and Mara A. Strier, Trial Attorneys, Department of Justice, Tax Division, and Richard Floyd Tatum Jr. ("Defendant"), and Defendant's counsel, Richard O. Ely II, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

#### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Criminal Information. Count One charges Defendant with willfully failing to truthfully account for and pay over the payroll taxes owed by Associated Marine & Industrial Staffing, Inc. for the second quarter of 2012, in violation of Title 26, United States Code, Section 7202. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Criminal Information, or proved to a jury or judge proven beyond a reasonable doubt.

#### Punishment Range

2. The statutory maximum penalty for a violation of Title 26, United States Code, Section 7202, is imprisonment of not more than 5 years and a fine of not more than $250,000, together with

the costs of prosecution. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, sections 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, the Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Waiver of Appeal and Collateral Review**

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to appeal on the grounds of: (1) ineffective assistance of counsel; (2) a sentence that exceeds Defendant's applicable guidelines range under offense level 23 of the United States Sentencing Guidelines, which corresponds to a sentence of 46-57 months imprisonment; (3) a sentence that exceeds the statutory maximum penalty; or (4) a sentence based on an unconstitutional factor, such as race, religion, national origin or gender. If the government, however, exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then Defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are

"effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

8. The United States agrees to each of the following:

(a) At the time of sentencing, the United States will not oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(b) If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States will not oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater);

(c) The United States will not oppose a sentence at the low-end of the applicable guideline range as determined by the Court; and

(d)     The United States agrees that the relevant conduct in this case for purposes of sentencing is $18,298,604. The United States agrees that the amount of restitution in this case should be $18,298,604.

**Agreement Binding**

9.      The United States agrees that it will not further criminally prosecute defendant in the Southern District of Texas for offenses arising from conduct charged in the Information. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas, the Tax Division of the U.S. Department of Justice, and defendant. It does not bind any other United States Attorney. The United States will bring this Plea Agreement and the full extent of defendant's cooperation to the attention of other prosecuting offices if requested.

**United States' Non-Waiver of Appeal**

10.     The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

12. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) Defendant has a right to have the United States Attorney present the charges in the Criminal Information to a Grand Jury consisting of not less than sixteen (16) nor more than twenty-three (23) impartial citizens, who would hear the facts of the case as presented by the United States Attorney and witnesses and then return an

indictment against the defendant only if twelve (12) or more members of the Grand Jury found that there was probable cause to believe the defendant committed the crime(s) charged in the Criminal Information;

(b) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(c) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(d) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

13. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Criminal Information. By signing this agreement, Defendant agrees that, if this case were to proceed to trial, the United States would prove each element of the offense beyond a

reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

At all times relevant to this case, Defendant was an owner and director of Associated Marine & Industrial Staffing, Inc. ("AMI"), an industrial staffing company with its corporate headquarters in Houston, Texas. AMI provided temporary labor to businesses in Texas and other states. Defendant, through AMI, employed both internal and external employees. Internal employees were the employees that worked for AMI at its headquarters or as administrative staff at the branch offices. External employees were the employees that AMI assigned to work on-site at client locations. AMI was required to withhold Federal Insurance Contributions Act (FICA) taxes, i.e. Social Security and Medicare taxes, and federal income taxes, collectively referred to as "payroll taxes", from both the internal and external employees' paychecks and to pay over the withheld amounts to the United States.

At all relevant times, Defendant was a person responsible for collecting, accounting for, and paying over the payroll taxes withheld from the wages of both the internal and external employees of AMI. Defendant exercised significant control over AMI's financial affairs. Defendant had the authority, and exercised the authority, to sign checks on behalf of AMI and to determine which creditors to pay and when to pay them. Indeed, Defendant signed the payroll checks for internal employees and directed the payment of external employees. Defendant also entered into contracts on behalf of AMI, including staffing agreements with clients and with factoring companies. Defendant hired and fired employees at AMI. Defendant also signed and filed the federal employment tax returns, Forms 941, for AMI. For the quarters ending March 31, 2008 through December 31, 2009, Defendant filed false and untimely employment tax returns for

AMI by willfully failing to report AMI's external employees on the returns. In May 2013, Defendant filed untimely employment tax returns for AMI for the quarters ending March 31, 2010 through December 31, 2012, reporting AMI's external employees but failing to make any payments with the returns.

For the quarters ending March 31, 2008 through December 31, 2012, Defendant withheld approximately $12 million in payroll taxes from AMI employees' paychecks but willfully failed to pay over the withheld funds to the Internal Revenue Service ("IRS"). Defendant also failed to pay over to the IRS approximately $6 million of the employer's share of FICA taxes for AMI during the same quarters. Defendant knew that the payroll taxes were due and owing but willfully chose not to pay over the withheld taxes. Instead of paying over the withheld taxes to the IRS, Defendant spent, among other expenditures, over $400,000 on his personal ranch and transferred over $100,000 to form a new staffing company. In addition, Defendant spent approximately one million dollars from AMI's bank account to pay off his personal credit cards, on which he charged trips to Las Vegas, Hawaii and France. Moreover, Defendant transferred hundreds of thousands of dollars from AMI to his own personal bank account, all while knowing that he did not pay over the payroll taxes that he withheld from AMI's employees' paychecks.

All of the above acts took place in the Houston Division of the Southern District of Texas.

The total tax loss, including relevant conduct, is $18,298,604.

**Breach of Plea Agreement**

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains,

conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to

facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19. Defendant and the United States agree that the IRS is the victim in this case, and Defendant agrees to pay restitution to the IRS, pursuant to 18 U.S.C. § 3663(a)(3), of $18,298,604 regardless of the count of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

20. Defendant agrees that the total amount of restitution reflected in this agreement results from Defendant's fraudulent conduct. Defendant agrees to pay restitution as ordered by the court in any restitution order entered pursuant to this plea agreement. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that

schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331. The total amount of restitution consists of the withheld payroll taxes and the employer's share of FICA taxes that Defendant failed to pay over to the IRS for the quarters ending March 31, 2008 through December 31, 2012.

| Quarter Ending | Unpaid Payroll Taxes (approx.) | Unpaid Employer's share of FICA (approx.) | |
|---|---|---|---|
| March 31, 2008 | 277,824 | 135,335 | |
| June 30, 2008 | 277,824 | 135,335 | |
| September 30, 2008 | 277,824 | 135,335 | |
| December 31, 2008 | 277,824 | 135,335 | |
| March 31, 2009 | 257,828 | 161,917 | |
| June 30, 2009 | 257,828 | 161,917 | |
| September 30, 2009 | 257,828 | 161,917 | |
| December 31, 2009 | 257,828 | 161,917 | |
| March 31, 2010 | 312,084 | 200,646 | |
| June 30, 2010 | 564,870 | 349,540 | |
| September 30, 2010 | 905,328 | 530,683 | |
| December 31, 2010 | 695,422 | 423,323 | |
| March 31, 2011 | 711,537 | 275,880 | |
| June 30, 2011 | 796,912 | 311,065 | |
| September 30, 2011 | 1,021,432 | 385,727 | |
| December 31, 2011 | 973,849 | 389,511 | |
| March 31, 2012 | 996,503 | 396,671 | |
| June 30, 2012 | 1,321,963 | 507,564 | |
| September 30, 2012 | 1,281,404 | 488,842 | |
| December 31, 2012 | 809,911 | 316,324 | |
| Total | $12,533,821 | $5,764,783 | $18,298,604 |

21. Defendant agrees to make his restitution payments to the Clerk of Court, including on each payment Defendant's name, social security number, the district court's docket number assigned this case, the tax periods to which the restitution has been ordered, and a statement that the payment is being submitted pursuant to the Court's restitution order. Defendant shall also include with the restitution payment a request that the Clerk of Court send the information and

restitution payment to the IRS at the following address:

>IRS-RACS
>Attn.: Mail Stop 6261, Restitution
>333 W. Pershing Ave.
>Kansas City, MO 64108

Defendant also agrees to send a notice of any restitution payment made to the Clerk of Court to the IRS at the above address.

### Fines

22. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Criminal Tax Loss and Civil Tax Liability

23. Defendant understands that the restitution ordered or paid in this case applies to employment taxes of AMI, and will not be applied to any of defendant's own U.S. Individual Income Tax Years. Defendant understands that the amounts of relevant conduct and restitution found by the court in this criminal case do not limit the IRS in determining any additional income taxes that defendant may owe on his own individual federal income taxes. Defendant understands that the IRS is free to civilly audit any of Defendant's individual federal income taxes and may seek additional taxes, penalties, and interest for those income tax years.

24. Defendant understands that this plea agreement does not restrict the IRS from pursuing the civil trust fund recovery penalty assessment under 26 U.S.C. § 6672 against

defendant or against any other responsible person for employment taxes owed by AMI for any quarter. Any amounts Defendant pays in restitution in this case, however, will be applied as payments or credits to amounts assessed against him for civil penalties under 26 U.S.C. § 6672 for the relevant quarters.

25. Defendant agrees not to file any claim for refund of any amount ordered or paid in restitution in this case. Defendant further agrees not to file any action in a U.S. District Court, in the U.S. Tax Court, or in the U.S. Court of Federal Claims seeking a refund, offset, or other recovery of any amounts ordered or paid in restitution in this case, except that Defendant, as mentioned above, is entitled to have any amounts paid in restitution in this case applied to any civil amounts assessed against him relating to employment taxes of AMI for the relevant quarters.

26. Defendant agrees to cooperate fully with the IRS in determining all correct employment tax liabilities and income tax liabilities involved in this case and in this investigation. Defendant agrees to make all books, records, and documents in his possession, custody, or control available to the IRS for use in computing all civil tax liabilities of any taxpayers.

27. Nothing in this plea agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties, or interest due from any taxpayer. Defendant agrees that this plea agreement and any judgment, order, release, or satisfaction issued in connection with this plea agreement will not satisfy, settle, offset, or compromise Defendant's or any other taxpayer's obligation to the pay the balance of any civil income tax liabilities, including additional taxes, penalties, or interest. Defendant agrees that this plea agreement and any judgment, order, release, or satisfaction issued in connection with this plea agreement will not satisfy, settle, offset, or compromise AMI's obligation to pay all employment taxes, including

taxes, interest, and penalties, owed for any quarter or Defendant's or any other taxpayer's obligation to pay any civil penalty assessment made against defendant or against any other taxpayer for employment taxes owed by any entity for any quarter.

### Complete Agreement

28. This written plea agreement, consisting of 18 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _March 22_, 20_16_

_____
RICHARD FLOYD TATUM JR.

Subscribed and sworn to before me on _March 22_, 20_16_

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

Page 15 of 18

APPROVED:

ABE MARTINEZ
ACTING UNITED STATES ATTORNEY

By: _____
Grace E. Albinson
Mara A. Strier
Trial Attorneys, Tax Division
U.S. Department of Justice
601 D Street, NW
Washington, DC 20004
Tel: (202) 514-5145

By: _____
Richard O. Ely II
Richard O. Ely II, PLLC
Attorney at Law
5090 Richmond Ave.
Suite 539
Houston, Texas 77056
Tel: 713-524-3443

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. _____

RICHARD FLOYD TATUM JR.

PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant her rights with respect to the pending Criminal Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines, which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____  MARCH 22, 2017
Richard O. Ely II  Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the Criminal Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     3/22/2017
Richard Floyd Tatum Jr.              Date
Defendant